UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIM M. COULBOURN,

       Plaintiff,

v.                                    Case No. 8:10-cv-769-T-27TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

       Defendant.
                                 /

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-one years old at the time of her administrative hearing in December 2007. According to administrative filings, she stands 5' 2' tall and weighed 200 pounds. Plaintiff has a high school education with some college and training as a home health aide. Her past relevant work was as a nurse's assistant, home health care worker, cashier checker, and in customer service. Plaintiff applied for disability benefits in November 2003,[1] alleging disability as of February 24, 2002, by reason of attention deficit hyperactivity disorder

---

[1] Plaintiff initially applied for benefits in December 2002. (Doc. 65).

(ADHD), obsessive compulsive disorder (OCD), depression, panic attacks, and pain in her neck, back and joints. Plaintiff's application was denied originally and on reconsideration.[2]

The Plaintiff received a [second] *de novo* hearing before an Administrative Law Judge (ALJ) on December 13, 2007.[3] The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she could no longer work due to fibromyalgia, arthritis, mental impairments including confusion and disorientation, OCD, panic attacks, and poor concentration. By her account, all of her joints hurt as does her skin. She continues to have problems in her low back, which effects her hips, knees, and feet. She sees a chiropractor for the problem. By her account, she can walk only for about ten to fifteen minutes before her knee gives out. She now uses a cane for safety. Plaintiff estimated she can stand for about ten minutes. Sitting is a problem due to severe pain in her tailbone. She claims to lift nothing more than ten pounds. Plaintiff was taking Oxycodone and Seroquel four time a day, plus Klonopin and Wellbutrin in the morning. It appears that she was also taking a muscle relaxer. Plaintiff believes that medication causes her confusion and slurred speech. On a daily basis, she is in bed a lot and she cares for her dogs.

---

[2]Plaintiff filed an initial application for benefits in December 2002.

[3]Plaintiff also received a hearing on her initial application for benefits. That hearing was conducted in June 2006. At that time, Plaintiff claimed disability by reason of ADHD, OCD, panic attacks, problems with her neck and back/tailbone, an unstable rib cage, and an inability to be around people. She testified that she gets upset and occasionally cuts herself; does not like to be around people; stays at home, lying in bed and watching television; plays games on her computer and emails; and cares for her dog and another dog. (R. 725-48). The ALJ dismissed Plaintiff's claim in October 2006, apparently because Plaintiff had not sought reconsideration after her claim initially was denied. (Doc. 43).

According to Plaintiff, she has heard voices in the past but medication has helped with that. She does not drive except as necessary because she gets disoriented easily. She also has racing thoughts that prevent her from reading. (R. 751-59).

The ALJ next took testimony from a William Harvey, a vocational expert (VE). The VE classified Plaintiff's past relevant work as a home health aide, cashier checker, and a customer service manager. In a hypothetical question assuming an individual of Plaintiff's age, education, and work experience and assuming the capacity for light exertional work with only occasional climbing, balancing, stooping, crouching, kneeling, and crawling; no exposure to dangerous moving machinery or unprotected heights; and no work involving detailed or complex tasks or more than occasional interaction with the public, the witness indicated that such individual could not perform Plaintiff's past work. However, the VE identified other jobs such as small products assembly, mail clerk, and merchandising marker as light jobs which such hypothetical individual could perform. On a further assumption that such individual would be limited to sedentary work and need to alternate sitting and standing at will, the VE identified jobs such as medical supplies assembler, surveillance systems monitor, and scale attendant as work available to such an individual. If, secondary to the effects of pain and medication, such individual could not sustain attention or concentration for more than a few minutes at a time or sustain the physical activity for an eight-hour work day or forty-hour work week, the VE opined that no such jobs would be available. (R. 759-63).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary. The decision reflects Plaintiff's date last

insured was December 30, 2003, although an administrative record entry suggests December 30, 2004. *See* (R. 27, 117).

By her decision of March 28, 2003, the ALJ determined that while Plaintiff has severe impairments related to ADHD, OCD, cannabis abuse, borderline personality disorder, major depression disorder, panic disorder, fibromyalgia, asthma, obesity, mild degenerative disorder of the lumbar spine, mild degenerative joint disease of the right knee, cervical spondylosis, plantar fasciitis, and coccydynia, she nonetheless had the residual functional capacity (RFC) to perform a limited range of sedentary exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 25-32). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

To establish eligibility for Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises a single claim on this appeal, namely, that the decision of the ALJ is not supported by substantial evidence. (Doc. 15 at 6-7). In factual support, Plaintiff notes that the ALJ incorrectly gave significant weight to an assessment by Garcia De Sousa, M.D., because that assessment did not pertain to Plaintiff. She urges that while the ALJ gave reasons for finding Plaintiff not entirely credible and for finding a RFC for sedentary work, the ALJ's error in giving significant weight to an assessment that related to another person and not the Plaintiff dictates that any decision based on that assessment is incorrect and a remand for further consideration is required.

In response, the Commissioner initially notes that he previously filed a motion for withdrawal of Dr. De Sousa's report from the administrative record and the motion was granted. *See* (Doc. 16). While agreeing that the ALJ incorrectly relied upon this report from Dr. De Sousa, the Commissioner urges that the ALJ also relied upon other acceptable medical sources who actually treated the Plaintiff. Given the detailed review of the objective, psychological, and medical evidence, including assessments from state agency consultants, the Commissioner urges substantial evidence supports the decision and that a remand merely to delete reference to evidence erroneously included would serve no practical purpose in this

6

instance where the report has been stricken and where the balance of the medical record supports the conclusion. In sum, the Commissioner urges that given the substantial evidence supporting the conclusion that Plaintiff is not disabled, the appeal should be denied.

After careful review of the decision in light of the whole of the medical record, I conclude that a remand would serve no useful purpose despite the ALJ's improper consideration of the report from Dr. De Sousa. Here, the decision reflects that in summing up her conclusion that Plaintiff had the RFC for a restricted range of sedentary work, the ALJ stated that she gave "significant weight to the assessments of Garcia De Sousa, M.D., who noted that the claimant was able to walk on her toes and heels without difficulties. A motor system examination did not reveal focal weakness or paralysis (Exhibit B-21F)."[4] (R. 31). The parties agree that the consideration of that assessment was improper as it does not relate to the Plaintiff. Nevertheless, given the whole of the record considered by the ALJ and the failure of the Plaintiff to demonstrate from the relevant record that she does not possess the RFC for a limited range of sedentary work or demonstrate error in the ALJ's credibility and vocational findings, the ALJ's decision should be affirmed despite the error.

---

[4]That exhibit, which was originally submitted by the Plaintiff's attorney, contains forty-four pages of treatment notes from Michelle Spuza-Milford, M.D., and Swanthri DeSilva, M.D., and consulting reports from other physicians. *See* (R. 438-81). Two pages of those notes were removed from the record (R. 464-65), as well as one page from Exhibit C-10F (also records from Dr. Spuza-Milford), on the unopposed motion of the Commissioner as such related to another individual and doctor. *See* (Doc. 16-17). Upon request of chambers, Plaintiff's counsel filed redacted copies of the two pages removed from Exhibit B-21F. (Doc. 22). In response, while the Commissioner maintains that the evidence should not be allowed in its present form, he submits a certified supplemental transcript containing the three pages previously stricken, redacted of personal identifying information related to the other individual. *See* (Docs. 23-25). The Commissioner's supplement includes the two pages Plaintiff submitted, as well as the one page removed from Exhibit C-10F. *See* (Doc. 25).

A fair reading of the decision reflects that the ALJ's RFC assessment was based on a review of the whole of the objective and clinical record of Plaintiff's physical and mental health. *See* (R. 29-31). By the ALJ's review of the mental health record, while Plaintiff suffered from ADHD, OCD, and panic disorder, the impairments resulted in only mild difficulties in her activities of daily living; mild difficulties with concentration, persistence, and pace; and a moderate impairment in social functioning, that is, in getting along with others. (R. 28). The ALJ found no evidence that she had suffered episodes of decompensation. (R. 28). In determining her RFC, the ALJ credited these difficulties by limiting Plaintiff to work requiring only occasional contact with the public and for no work involving detailed or complex tasks. (R. 28, 31). This mental RFC is not challenged by Plaintiff. Nor does Plaintiff demonstrate error in the ALJ's conclusions with respect to her mental capacity. Significantly, there is no demonstration by Plaintiff that consideration of the notes from Dr. De Sousa in any way undermines the ALJ's conclusions with respect to Plaintiff's mental functioning.

As for Plaintiff's physical limitations, while the discussion of the record is rather summary given its volume, the decision again reflects the ALJ's consideration of both the objective and clinical record as a whole. (R. 29-31). As for the objective record, such is revealed primarily in the records from Drs. Spuza-Milford and De Silva (Exhibit B-21F) and the records from St. Anthony's Tyrone Imaging and St. Petersburg General Hospital (Exhibits B-20F and B-17F). As the ALJ noted, x-ray evidence revealed only mild spondylytic and degenerative changes in the lumbar and thoracic spine (R. 31) and a MRI was normal aside

from revealing disc desiccation at L5-S1 (R. 29).[5] Other reports in these exhibits reveal objective evidence for only mild degenerative changes in Plaintiff's knees and mild spinal stenosis in the cervical spine. While Dr. De Sousa's notes within Exhibit B-21F should not have been considered, that they were appears inconsequential given the record as a whole. Nevertheless, as the Commissioner urges, nowhere in Drs. Spuza-Milford's and DeSilva's notes is there any finding of disability or any indication that they restricted or limited Plaintiff more than the ALJ did by her RFC assessment for a restricted range of sedentary work. Also considered by the ALJ was the report from Thanh T. Le, M.D., a pain specialist who saw Plaintiff at the request of Dr. Spuza-Milford for her pain complaints. (R. 29-30). As the decision reflects, the ALJ also recognized the diagnoses for low back pain, degenerative disc disease, neck pain, and myofascial pain. (R. 30). As for Plaintiff's claim of severe pain in her tailbone, such was considered by the ALJ as well. Thus, the ALJ credited Plaintiff with severe coccydynia, but noted the findings of Mitchell LeVine, M.D., which again, gave only limited support to her claim. (R. 27, 29). Thus, according to Dr. LeVine, his examination findings were "completely normal." (R. 425). And, by his account, he could do nothing for her pain complaints, which he suggested would have to be handled by her rheumatologist. (R. 423-27).

After full consideration of her physical complaints in light of the medical evidence, the ALJ concluded that Plaintiff was capable of simple, non-complex sedentary work which

---

[5]"Desiccated disc: 1. Disc with reduced water content, usually primarily of nuclear tissues. 2. Imaging manifestations of reduced water content of the disc; or apparent reduced water content, as from alterations in the concentration of hydrophilic glycosaminoglycans. http://www.asnr.org/spine_nomenclature/glossary.shtml (last visited July 20, 2011).

9

allowed for a sit/stand option and other postural limitations.[6] (R. 28). Significantly, the Plaintiff does not demonstrate from those records properly reviewed by the ALJ any error in the ALJ's conclusion concerning her physical RFC. And again, Plaintiff fails to show how the ALJ's consideration of Dr. De Sousa's notes renders the RFC unreliable such that a remand is warranted.

While the court recognizes the significance of Plaintiff's claim for benefits and does not wish to suggest that such errors by an ALJ should be tolerated, here, I am obliged to conclude the error is harmless. The error is one of fact, that is, the ALJ's citation to and reliance on Dr. De Sousa's report is an erroneous factual finding and that alone does not require a remand. Otherwise, Plaintiff makes no showing of any legal error. In the circumstances, despite the error, I conclude that a remand would serve no useful purpose and would in no way alter the result. Such conclusion is consistent with applicable case law in this circuit. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further

---

[6]The ALJ assessed Plaintiff capable of sitting for up to six hours a day and standing and walking for two hours in an eight-hour workday. (R. 28).

10

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
27th day of July 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record